**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
ST. FRANCIS HOSPITAL AND         :
MEDICAL CENTER, INC.,            :
                                 :
    plaintiff,                   :
                                 :
v.                               :    CASE NO. 3:22cv50(SVN)
                                 :
HARTFORD HEALTHCARE CORP.,       :
HARTFORD HOSPITAL, HARTFORD      :
HEALTHCARE MEDICAL               :
GROUP, INC., INTEGRATED CARE     :
PARTNERS, LLC,                   :
                                 :
    defendant.                   :
```

<u>RULING ON PLAINTIFF'S SECOND MOTION TO COMPEL</u>
<u>PRODUCTION OF DOCUMENTS BY THE BRISTOL HOSPITAL</u>

Pending before the Court is the plaintiff's second motion to compel the production of documents by non-party Bristol Hospital ("Bristol"). (Dkt. #216.) The Court has considered the arguments of the parties and for the foregoing reasons the motion to compel is GRANTED, in part. Bristol must provide the 2023 Brand Perception and Assessment document to plaintiff, but production will be limited to outside attorney eyes only and the document can be partially redacted, as explained herein.

**I. Legal Standard**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that

1

>   [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Discovery under the Federal Rules of Civil Procedure is a conditional and carefully circumscribed process." Bagley v. Yale Univ., 315 F.R.D. 131, 144 (D. Conn. 2016), as amended (June 15, 2016). The party seeking the discovery has the burden of demonstrating relevance. Id.  This analysis "requires one to ask: Is the discovery *relevant* to a party's *claim* or *defense*? Which claim? Which defense? At this stage of the litigation, one looks to the parties' pleadings for their claims or defenses." Id. Once the requesting party has demonstrated relevance, "[t]he party resisting discovery bears the burden of showing why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009).

"Federal Rule of Civil Procedure 45 allows a party to serve a subpoena for the production of documents and other information from a non-party." Strike 3 Holdings, LLC v. Doe, No. 3:19 CV 115 (JBA), 2019 WL 2066963, at *2 (May 10, 2019 D. Conn.). While the scope of discovery under Rule 45 is still dictated by

the parameters of Rule 26, considerations regarding non-parties are given special weight. Id.

> Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.

Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998).

> An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. Whether a subpoena imposes an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."

Travelers Indem. Co. v. Metro. Life Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005)(quoting United States v. Int'l Bus. Machines Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979).

II.     Discussion

Initially, the Court held an oral argument regarding this motion to compel on March 7, 2024. At the end of the oral argument, the undersigned ordered that Bristol conduct a search for responsive documents and then meet and confer with plaintiff regarding any such documents.[1] (Dkt. #239.)  The undersigned

---

[1] At the time of the oral argument, it became apparent that Bristol had not fully searched for, or reviewed, documents that were responsive to plaintiff's requests.  Instead, Bristol noted that it is not a party to this lawsuit and argued that any responsive documents would contain confidential and proprietary information.

3

stated that, if the parties were unable to resolve their dispute after engaging in this process, the undersigned would hold a second oral argument. The parties were instructed to complete this process by March 22, 2024.

After the parties engaged in the process, they filed a status report which advised the undersigned that they had a dispute regarding a "2023 Brand Perception and Assessment" (hereafter the "brand study"). The undersigned ordered Bristol to submit the brand study for *in camera* review. (Dkt. #251.) Following the *in camera* review, the undersigned requested that Bristol submit a proposed redacted version of the brand study for *in camera* review. (Dkt. #263.) Thereafter, the undersigned requested another proposed redacted version of the brand study with more targeted redactions to be provided both *in camera* and to plaintiff's counsel. (Dkt. #283.)

Thereafter, a dispute arose regarding how much information, if any, should be redacted from the brand study. Therefore, a status conference was held on July 18, 2024. (Dkt. 290.)

The brand study was commissioned by Bristol in 2023. In the joint status report outlining the dispute, plaintiff argued that Bristol is obligated to produce the 2023 brand study due to a ruling that the undersigned issued in September of 2023. Plaintiff asserts that the undersigned ordered Bristol to produce the 2020 version of the brand study and concluded that

4

the 2020 version was relevant, that production of the 2020 version would not impose an undue burden on Bristol, and that the 2020 version did not contain confidential or proprietary information. (Dkt. #286 at 1-2.) However, contrary to plaintiff's belief, the undersigned's prior ruling did not apply to or address the brand study.

    To be clear, in the previous ruling, the undersigned ordered Bristol to produce a Community Needs Assessment ("CNA") document. (Dkt. #203.)  Bristol had discussed and described the CNA document during an oral argument on September 11, 2023.  In light of Bristol's representations regarding the contents of the CNA document, the undersigned ordered Bristol to produce the CNA document to plaintiff. (Dkt. #203 at 10.)  It should be noted that Bristol did not give a copy of the CNA document to the undersigned or bring a copy of the document to the oral argument. Instead, Bristol orally described the contents of the CNA document to the undersigned and plaintiff. (Dkt. #203 at 10-11.) Based on Bristol's description, the undersigned ordered Bristol to produce the CNA document.

    In the joint status report and during the oral argument on July 18, 2024, the plaintiff seemed to be under the impression that the CNA document and the 2023 brand study were similar documents, and that the 2023 brand study was simply a more recent version of the CNA document. (Dkt. 286 at 2)("The

5

difference is the new document is more recent (2023 vs. 2020), and therefore provides more relevant information regarding the current competitive strength or weakness of Bristol."). Thus, plaintiff argued that since the undersigned had already determined that the earlier version of the document was relevant, it logically followed that the 2023 version would also be relevant. (Dkt. #286 at 2.)  Bristol did not address this argument in its portion of the joint status report. Instead, Bristol noted that it is not a party to this lawsuit and argued that Bristol's internal brand perception analysis is, at best, marginally relevant to this case. (Dkt. #286 at 4-7.)  Bristol also argued that the contents of the 2023 brand study are highly confidential.

During the oral argument on July 18, 2024, the undersigned asked Bristol if Bristol agreed with plaintiff's assertion that the 2023 brand perception survey is an updated version of the CNA document.[2]  Bristol said it did not believe it was an updated version of the same document. To help resolve the confusion, the undersigned ordered Bristol to submit a copy of the previously submitted document to chambers for review.  Bristol complied.

---

[2] In an update posted to the docket (dkt. #296), Bristol clarified that the 2023 brand survey is not the CNA document that the undersigned ordered Bristol to produce in September of 2023. Instead, the 2023 brand survey is an update of a brand survey that Bristol did in 2020. The Court had not seen, discussed or ordered Bristol to produce the 2020 version of the brand survey.  For that reason, the Court's ruling cited by and relied upon by plaintiff is not totally applicable here.

Shortly thereafter, Bristol filed a notice on the docket which clarified that when Bristol complied with the undersigned's order and produced the CNA document, Bristol discovered a brand study from 2020. (Dkt. #296.) Bristol then voluntarily produced the 2020 brand study to plaintiff. (Dkt. #296.)

To clear, there are three different documents:(1) the CNA document that the undersigned ordered Bristol to produce in September of 2023, (2) the 2020 brand study, and (3) the 2023 brand study. The undersigned's ruling in September of 2023 only addressed the CNA document; it did not address the 2020 brand study. The brand study was never mentioned or discussed during the oral argument on September 11, 2023, and the undersigned had no knowledge that such a document existed. Based on Bristol's recent filing, it appears that Bristol only became aware of the brand study document after the oral argument and subsequent ruling in September of 2023. Thus, the undersigned's ruling compelling production of the CNA document does not resolve the current dispute over the 2023 brand study.

Having sorted out the confusion regarding the CNA document, the 2020 Brand Perception Study, and the 2023 Brand Perception Study, the undersigned will now address plaintiff's motion to compel production of the 2023 brand study. Based on the undersigned's review of the 2020 and 2023 brand studies, it is clear that the 2020 brand study is much more detailed than the

7

2023 brand study. The 2020 study is also significantly longer than the 2023 study (58 pages versus 20 pages). Bristol explained that it produced the 2020 study to plaintiff because Bristol considered the information in the 2020 study to be stale at the time of production (2023). In contrast, Bristol states that the information it wants to redact from the 2023 study is not stale. Therefore, Bristol argues that it should not be ordered to produce the full 2023 document to plaintiff.

The Court feels constrained to grant, in part, plaintiff's motion to compel production of the 2023 Brand Perception Study. Arguably, the 2023 survey has some marginal relevance to the case. Given the similarity of the information contained in the 2023 study, to the information contained in the voluntarily produced 2020 version of the study, the undersigned finds that the information has essentially been deemed relevant by Bristol. Although Bristol argues that there is limited value or relevance to the information, Bristol has for all intents and purposes waived any such argument by voluntarily producing the 2020 version. Presumably, Bristol could have and would have objected to the production of the 2020 study if it thought the stale information was not relevant.[3] It would be difficult to argue

---

[3] Even though Bristol asserts that the information in the 2020 survey was stale as of 2023, Bristol would have been able to argue that the information contained therein was simply not relevant. As noted earlier, the 2020 study is 58 pages long and contains very detailed information.

that a voluntarily produced, confidential study from 2020 is relevant to the litigation, but then argue that the updated version of the same document lacks relevance.

Considering that the voluntarily produced 2020 version of the survey is far more detailed than the 2023 version and contains no redactions, it is difficult to conclude that Bristol's production of the 2023 study would greatly burden Bristol or pose a substantial risk. The 2020 study is 58 pages and contains a variety of data and charts, including five pages of findings and recommendations. The 2020 study also contains a full demographic breakdown of the survey participants. In contrast, the 2023 document does not contain demographic information and is only 20 pages long. The Court orders Bristol to produce the 2023 Brand Perception Survey. However, the forward-looking recommendations on page 20 of the study can be redacted. Additionally, production of the redacted 2023 study will be limited to outside counsel eyes only.

This ruling protects the recommendations and forward-looking information in the 2023 brand perception survey that are still under consideration by Bristol or about to be implemented. Presumably, given Bristol's argument that the 2023 study is not

stale, the forward-looking recommendations are the timeliest aspect of the study.

The Court finds that the limited redaction of the forward-looking recommendations in the 2023 study, acknowledges Bristol's position that the 2020 document produced was stale at the time of the voluntary production. The 2020 version also contained multiple forward-looking recommendations and findings related to the contents of the 2020 study which arguably extended the relevant period covered by the survey.[4]  The 2023

---

[4] Plaintiff argues that the findings and recommendations in the survey are relevant to plaintiff's case.  While the undersigned understands that the concept of relevance is broad, it is not unending. Plaintiff suggests that any and all recommendations contained in the study are indicative of Bristol's ability or inability to compete with Hartford HealthCare and are therefore relevant.  This argument is simply too broad and operates on the assumption that all actions taken or discussed by Bristol are a response to the market dominance of Hartford HealthCare, not actions taken in response to the perceptions of Bristol's own patients based on the personal experiences of those patients.  Plaintiff's perception that the recommendations are relevant is outweighed by the undue burden on Bristol. Bristol is a non-party that is being forced to produce information it considers to be highly confidential and proprietary to a much larger competitor who has dragged Bristol into its litigation. "Within this Circuit, courts have held nonparty status to be a significant factor in determining whether discovery is unduly burdensome." Tucker v. Am. Int'l Group, Inc., 281 F.R.D. 85, 92 (D. Conn. 2012).  While in this case the Court has found that the production, subject to redaction, is appropriate for other reasons, it is worth noting that in somewhat similar circumstances a court in this district has held that
> disclosure of proprietary information under any protective order imposes at least some burden because it carries some risk of competitive harm and some risk of inadvertent disclosure. In light of the confidential nature of the documents and what can be considered most favorably to Plaintiffs as marginal relevance, almost any burden is undue.

Berkelhammer v. Voya Institutional Plan Services, LLC, No. CV 3:22-MC-00099-MEG, 2023 WL 5042526, at *3 (D. Conn. Aug. 8 2023).

brand study is undeniably more recent than the 2020 brand study, however, allowing Bristol to redact the recommendations will assuage some of Bristol's concerns.  Further, limiting the dissemination of the 2023 study to outside counsel only, will further reduce the potential harm or burden to Bristol.

This is not a Recommended Ruling.  This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. R. 72.2.  As such, it is an order of the Court unless reversed or modified by a district judge upon motion timely made.

SO ORDERED this 9th day of August, 2024 at Hartford, Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge